UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| MICHAEL P. GOLDOWSKY, Individually and as President/CEO of Gold Medal Technologies Heart, Inc.<br><br>Plaintiff,<br><br>-vs-<br><br>ALDO GARERI, Individually and in his official capacity as President/CEO of PCI, Inc.,<br><br>Defendant. | Civil Action No.: 4:17-cv-2073-RBH-TER<br><br><br><br>**REPORT AND RECOMMENDATION** |

## I.     INTRODUCTION

In this action, Plaintiff asserts claims of defamation per se against Defendant Gareri[1] and asserts that jurisdiction is proper due to diversity of citizenship pursuant to 28 U.S.C. § 1332. Presently before the court is Defendant's Motion to Dismiss (ECF No. 11) for lack of personal jurisdiction and failure to state a claim.[2] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule

---

[1] Plaintiff captions this action with one Defendant, Aldo Gareri. However, in the body of his complaint, he identifies PCI as a Defendant as well. Compl. ¶ 4. The service documents indicate only that Gareri was served with process. Certificate of Service (ECF No. 9). Gareri has appeared pro se only on behalf of himself and, indeed, a pro se litigant could not appear on behalf of PCI. He notes that he is not associated with "Professional Corporate Image, Inc." as identified by Plaintiff in his complaint, Compl. ¶ 4, or the entity included on plaintiff's counsel's cover letter accompanying the summons and complaint. See Cover Letter (Ex. to Def. Motion).

[2] Also pending is Plaintiff's Amended Motion for Preliminary Injunction (ECF No. 7). However, the court must first determine whether it has jurisdiction over Defendant before it can address any other matters raised in this action. See, e.g., Sucampo Pharms., Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 548 (4th Cir. 2006) (explaining that "dismissal of a case on an issue relating to the merits of the dispute, such as failure to state a claim, is improper without resolving threshold issues of jurisdiction, including personal jurisdiction") (citing Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999)).

73.02(B)(2)(e), DSC.   This report and recommendation is entered for review by the district judge.

## II.   FACTUAL ALLEGATIONS

Plaintiff resides in Horry County, South Carolina, and is the President/CEO of Gold Medical Technologies Heart, Inc. (GMT Heart)[3], which is organized and existing under the laws of the State of Wyoming and does business exclusively in the State of South Carolina.  Compl. ¶¶ 1-2.  Plaintiff is a biomedical engineer who designs and develops left ventricular heart assist blood pumps.  Compl. ¶ 9.  GMT Heart was formed for the purpose of marketing the Magnevad, a heart pump device. Compl. ¶¶ 3, 10.

Defendant Gareri resides in the State of New York and Plaintiff alleges he is the President and CEO of Professional Corporate Image, Inc. (PCI), which is organized and existing under the laws of the State of New York and doing business in the State of New York.  Compl. ¶¶ 4, 6.  PCI is in the business of commercial photography, website design, and general internet consulting. Compl. ¶ 5.

Plaintiff alleges that on January 16, 2017, PCI and GMT Heart entered into a written contract whereby PCI agreed to perform certain services for GMT Heart, including, inter alia, developing a website for GMT Heart, for which PCI would be compensated pursuant to the parties' agreement, and PCI developed a website for GMT Heart at www.GMTHeart.com.  Compl. ¶¶ 16, 17. Subsequently, the parties had a difference of opinion about services that were to be provided and compensation that was to be paid under the contract.  Compl. ¶ 18.  Gareri, who retained access to www.GMTHeart.com as its web designer and creator, modified the website to make false, damaging, and offensive statements about Goldowsky and GMT Heart, and which has caused Plaintiff to suffer

---

[3] The caption lists Gold Medal (rather than Medical) Technologies Heart, Inc. but the body of the Complaint references Gold Medical Technologies Heart, Inc., which Plaintiff abbreviates as GMT Heart.

severe damage to and/or loss of his good reputation, shame, mortification, injury to his feelings, and damage to his business.  Compl. ¶¶ 19, 30.

### III.   STANDARD OF REVIEW

Whether a court has personal jurisdiction over a defendant is properly challenged under Fed.R.Civ.P. 12(b)(2).  When a court's personal jurisdiction is challenged, the burden is on the plaintiff to establish that a ground for jurisdiction exists. Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). When the court resolves the motion on written submissions (as opposed to an evidentiary hearing), the plaintiff need only make a "prima facie showing of a sufficient jurisdictional basis." Id. However, the plaintiff's showing must be based on specific facts set forth in the record. Magic Toyota, Inc. v. Southeast Toyota Distributors, Inc., 784 F. Supp. 306, 310 (D.S.C. 1992). The court may consider the parties' pleadings, affidavits, and other supporting documents but must construe them "in the light most favorable to plaintiff, drawing all inferences and resolving all factual disputes in his favor, and assuming plaintiff's credibility." Sonoco Prods. Co. v. ACE INA Ins., 877 F. Supp. 2d 398, 404-05 (D.S.C. 2012) (internal quotations omitted); Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003) ("In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff."). A court considering the issue of personal jurisdiction "need not credit conclusory allegations or draw farfetched inferences." Sonoco, 877 F. Supp. 2d at 205 (internal quotation marks omitted).

### IV.   DISCUSSION

A bedrock requirement in any civil action is that the district court in which a complaint is brought must have personal jurisdiction over the defendants.  A district court may assert personal jurisdiction over a non-resident defendant if 1) a proper statutory basis exists under the forum state's

long-arm statute; and 2) assertion of jurisdiction does not overstep the bounds of constitutional due process. Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir.2003). The South Carolina Supreme Court has held that the State's long-arm statute, S.C. Code Ann. § 36-2-(803), is coextensive with the limits of the Due Process Clause. ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir.1997); see also S. Plastics Co. v. S. Commerce Bank, 310 S.C. 256, 423 S.E.2d 128, 130 (S.C.1992). As a result, "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." ESAB Group, 126 F.3d at 623. (quoting Stover v. O'Connell Assocs., Inc., 84 F.3d 132, 135–36 (4th Cir.1996)) (internal quotation marks omitted); see also Sonoco Prod. Co. v. Inteplast Corp., 867 F. Supp. 352, 354 (D.S.C. 1994) ("Under South Carolina law, the first requirement collapses into the second."). "Thus, the pinnacle question in this case is not whether [Defendant's] activities meet the black letter requirements of South Carolina's long-arm statute, but whether its activities are sufficient to satisfy the requirements of constitutional due process." Platinum Hail & Dent Co. v. Ultimate Hail & Dent Co., No. CA 6:15-1658-GRA, 2015 WL 5602618, at *3 (D.S.C. Sept. 23, 2015).

Under the due process analysis, the plaintiff must show that the defendant had sufficient "minimum contacts" with South Carolina and that the exercise of jurisdiction would not offend "traditional notions of fair play and substantial justice." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980) (internal quotation marks omitted); see also International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). A defendant has minimum contacts with a state when "the defendant's conduct and connection with the forum state is such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. 559. Minimum contacts must be based on "some act by which the defendant purposefully avails itself of the

privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). This standard can be met in two ways: "by finding specific jurisdiction based on conduct connected to the suit or by finding general jurisdiction." ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 711-12 (4th Cir. 2002) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)).

Plaintiff asserts that this court has specific jurisdiction over Gareri based on his conduct connected with this action. Plaintiff asserts that Gareri entered into a contract with him knowing that he was a resident of South Carolina. See Exhibits A-C to Pl. Resp. However, the contract itself, which is attached as an exhibit to Plaintiff's complaint, reveals that the contract was not between PCI and GMT Heart, but between PCI and Gold Medical Technologies, Inc., which is organized and existing under the laws of the state of New York with its principal executive office in the state of New York. See https://appext20.dos.ny.gov/corp_public /CORPSEARCH.ENTITY_SEARCH_ ENTRY (search for "Gold Medical Technologies, Inc." last performed Jan. 26, 2018).[4] Therefore, the contract at issue here involves neither Goldowsky individually nor GMT Heart, as Goldowsky did not sign the contract in his individual capacity but only as President/CEO of Gold Medical Technologies, Inc., which is not a party to this action. Thus, any arguments that this court has

---

[4]The undersigned takes judicial notice of this information as it is a matter of public record "not subject to reasonable dispute." See Fed.R.Evid. 201(b); Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty Mem'l Hosp., 572 F.3d 176, 180 (4th Cir.2009); Ledford v. D.R. Horton, Inc., No. 3:09CV65, 2009 WL 2432631, at *3 (W.D.N.C. Aug. 6, 2009) (unpublished) (recognizing that courts may take judicial notice of public records, including specifically records of the North Carolina Secretary of State); Sabika, Inc. v. Goshen Sparkling Jewelry, LLC, No. CV 1:13-00848, 2013 WL 12180994, at *4 (S.D.W. Va. July 12, 2013) (taking judicial notice of records from the West Virginia Secretary of State).

jurisdiction over Gareri based upon the formation of this contract are without merit.[5]

Plaintiff also asserts that Gareri has minimum contacts with South Carolina because he "produced and distributed web content with the reasonable expectation that the content would be used and consumed with in South Carolina," Pl. Resp. p. 7, as evidenced by his inclusion of a link to the South Carolina Attorney General's Office on the website he created, where he listed the various agencies he has contacted regarding Plaintiff's business conduct. See Exhibit D to Pl. Resp. Plaintiff asserts that Gareri was intentionally targeting a South Carolina audience with the inclusion of that link. An out-of-state defendant's internet activity must be expressly targeted at or directed to the forum state to establish minimum contacts necessary to support the exercise of personal jurisdiction over defendant by the district court in the forum state. Young v. New Haven Advocate, 315 F.3d 256, 262-63 (4th Cir. 2002). A person's act of placing information on the internet is not sufficient by itself to subject that person to personal jurisdiction in each state in which information is accessed. Id. at 263. In ALS Scan, Inc. v. Dig. Serv. Consultants, Inc., 293 F.3d 707, 713 (4th Cir. 2002), the Fourth Circuit addressed "when [a defendant's] electronic contacts with a State are sufficient" to exercise personal jurisdiction over the defendant, and determined that

> a State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.

Id. at 714 (citing Zippo Manufacturing Company v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D.

---

[5]Furthermore, "an exchange of communications between two parties, one of whom is located in the forum state, in furtherance of a contract, will not generally constitute purposeful contact with the forum state for purposes of jurisdiction." WLC, LLC v. Watkins, 454 F.Supp.2d 426, 436–37 (M.D.N.C.2006); see also Holt Oil & Gas Corp. v. Harvey, 801 F.2d 773, 778 (5th Cir.1986) ("[T]he exchange of communications between Texas and Oklahoma in the course of developing and carrying out the contract was in itself also insufficient to constitute purposeful availment of the benefits and protections of Texas law.").

Pa. 1997)). The ALS Scan court noted that a "passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction." Id. (quoting Zippo, 952 F. Supp. at 1124).

Gareri used the website at issue here, www.GMTHeart.com, to warn doctors and investors about Plaintiff and his business practices. Nothing on the website indicates that Gareri intended to direct his electronic activity into the State of South Carolina or to engage in business or other interactions within the state that would create a potential cause of action cognizable in the state. His inclusion of a link to the South Carolina Attorney General's office is insufficient to indicate that Gareri intended to direct his website to a South Carolina audience because he included it within a list of agencies he, a non-South Carolina resident, had contacted with respect to Plaintiff, including New York State's Division of Corporations, Department of Corporation Tax, Tax Department, Department of Taxation and Finance, and Attorney General, as well as the Albany, NY FBI Office, and the Federal Trade Commission. Thus, the link was not there to be used by South Carolina residents, but by anyone who might have a need to submit a complaint regarding Plaintiff. The Fourth Circuit has indicated that acting with the manifest intent to target and engage in business with a particular state's residents is an important factor. See Young, 315 F.3d at 262-63; Carefirst of Md., Inc., 334 F.3d at 399. This action does not amount to targeting residents of South Carolina to engage in business with them.

While the inclusion of the link to the South Carolina Attorney General's website along with the language "[h]ere is the contact information for the agencies I have contacted, just in case you want to launch your own complaint" could be viewed as an indication that Gareri has filed a complaint with the South Carolina Attorney General's Office and is directing others into the state to do the same, this forum related activity is not substantial. Generally, for a court to exercise

specific jurisdiction consistent with due process, "the defendant's suit-related conduct must create a substantial connection with the forum State." Walden, 134 S. Ct. at 1121; see also Young, 315 F.3d at 263 (holding that when a defendant posts news articles on a website, the first and second prongs of the ALS Scan test require the plaintiff to show that the Internet newspaper purposefully directed electronic activity "in a substantial way to the forum state") (quoting Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1321 (9th Cir. 1998) (emphasis added)). Further, the focus of the website is not on the South Carolina Attorney General's office but on the history of Gareri's dealings with Goldowksy and the Magnevad. See, e.g., FireClean, LLC v. Tuohy, No. 1:16cv0294, 2016 WL 3952093, at *7 (E.D. Va. July 21, 2016) (noting that "even overt references to a State may be jurisdictionally insufficient if the focus of the article is elsewhere.").

Finally, Plaintiff's allegations do not arise from Gareri contact with the South Carolina Attorney General or his encouragement of others to do so. He alleges that he has been injured by the allegedly defamatory statements Gareri has written about him on the website. Directing electronic activity into the state is not the only element necessary to establish personal jurisdiction. The third part of the test set forth by the Fourth Circuit is whether "the [electronic] activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." ALS Scan, 293 F.3d at 714. Put another way, under the original test not specific to internet or electronic activity, the plaintiff must show that his claims arise out of those forum-related activities. Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan, 259 F.3d 209, 215-16 (4th Cir. 2001) (citing Helicopteros, 466 U.S. at 414–16; Burger King Corp., 471 U.S. at 472, 476–77). Plaintiff does not complain that Gareri defamed him with his contact with the South Carolina Attorney General's office and the inclusion of a link to that website is merely incidental to the allegations in this action. Cf. McNeil v. Biaggi Prods., LLC, No. 3:15CV751, 2017 WL 2625069, at *8 (E.D. Va. June 16,

2017) (finding that personal jurisdiction in Virginia where the defendant contacted the Richmond Virginia Police Department and the plaintiff alleged "defamation stemming <u>from those precise communications</u>") (emphasis added).

Plaintiff also argues that this court has personal jurisdiction over Gareri because he committed "a tortious act by defaming a South Carolina resident on a website rightfully owned by a South Carolina resident." Pl. Resp. p. 7. The <u>Calder</u> effects test applies in circumstances where "an out-of-state defendant has acted outside of the forum in a manner that injures someone residing in the forum." <u>Carefirst of Md.</u>, 334 F.3d at 397. The test requires that the plaintiff show that (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity. <u>Consulting Engineers Corp. v. Geometric Ltd.</u>, 561 F.3d 273, 280 (4th Cir. 2009) (citing <u>Carefirst</u>, 334 F.3d at 398 n.7). Defamation is an intentional tort. See <u>Loadholt v. S.C. State Budget and Control Bd., Div. of Gen. Servs. Inc. Reserve Fund</u>, 528 S.E.2d 670, 673 (S.C. Ct. App. 2000). However, to the extent Plaintiff's reputation is damaged as a result of Gareri's comments on the website, it cannot be said the that brunt of the harm was felt in South Carolina. Gareri directs the website to doctors and investors as indicated by the statement on the front page of the site, which states" "WARNING TO DOCTORS & INVESTORS: THE MAGNEVAD IS A SCAM–GET THE FACTS." See <u>http://gmtheart.com/</u> (last visited Jan. 22, 2018). If Plaintiff worked exclusively or even mostly with doctors and investors in South Carolina, it could be said that the brunt of the harm was felt in South Carolina. However, no such evidence has been presented to the court nor can it be gathered based on a review of the website. To the contrary, the website reveals that the heart

pump device, the Magnevad, has garnered attention from at least one doctor internationally.[6]  See Planet Aid, Inc. v. Reveal, Ctr. for Investigative Reporting, No. CV GLR-16-2974, 2017 WL 2778825, at *7 (D. Md. June 26, 2017) (finding no personal jurisdiction in Maryland where the allegedly slanderous "podcasts did not focus on Maryland and instead focused on Planet Aid's international dealings, with only incidental concern for Planet Aid's activities in Maryland."). Further, Plaintiff's own allegations indicate that the brunt of his injuries were not felt in South Carolina.  Plaintiff alleges that Gareri knew that his statements would be read "throughout the United States and the world" and those statements have been "read by members of the general public including Plaintiff's current and/or potential investors, throughout the United States and elsewhere." Compl. ¶¶ 25, 32.  He further alleges that Gareri's statements have caused harm to Plaintiff's "reputation within his professional circles and in the medical and engineering community at large," and have caused "the loss of future investors, the loss of previous and existing investors, the inability of Plaintiff to pursue new investors including investment bankers to raise venture capital, and the loss of the Armenia human implant project."  Comp. ¶¶ 21, 34.  These allegations, coupled with the evidence in the record, fail to give rise to a reasonable inference that the brunt of Plaintiff's injuries were felt in South Carolina.

Finally, Plaintiff fails to present sufficient evidence to show that "the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity."  Consulting Engineers Corp., 561 F.3d at 280.  As discussed in more detail above, Gareri's only forum-related activity was his contact with the South Carolina Attorney General's

---

[6] For example, the website includes a statement from Dr. Vahe Gasparyan, M.D., Chief of Adult Cardiac Surgery in Yerevan, Armenia, who has studied and agreed to collaborate on developing the Magnevad.  See http://gmtheart.com/dr-vahe-gasparyan/ (last visited Jan. 21, 2018).

office and his inclusion of a link to that office for visitors to the website to use. However, that contact is not "tortious activity" about which Plaintiff complains.

In sum, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." Walden v. Fiore, 134 S.Ct. 1115, 1125 (2014). The content on the website does not reflect that Gareri intended on directing his warnings to residents of South Carolina, such that it could be said that South Carolina was the focal point of his activity. "Posting allegedly defamatory comments or information on an internet site does not, without more, subject the poster to personal jurisdiction wherever the posting could be read, and the subject of the posting may reside." Shrader v. Biddinger, 633 F.3d 1235, 1241 (10th Cir. 2011) (finding that specific personal jurisdiction not established in defamation action based on comments made on internet forum where forum was geographically neutral, was directed at a world-wide audience). Plaintiff has failed to present the "more" necessary beyond the existence of the website and his residence in South Carolina to subject Gareri to personal jurisdiction in this state.

Plaintiff has failed to present sufficient evidence in the record to create a prima facie case for personal jurisdiction in this court. The record does not reflect "a manifest intent of targeting" South Carolina readers such that Gareri would have "reasonably anticipate[d] being haled into court [in South Carolina] to answer for the truth of the statements made in" his website posts. Young, 315 F.3d at 264. Accordingly, this court lacks personal jurisdiction over Gareri.

In his response, Plaintiff asks if this court determines that it lacks personal jurisdiction over Gareri, that it transfer the action as permitted under 28 U.S.C. § 1406(a). When a court is an improper venue to hear a dispute and lacks personal jurisdiction over the defendants, § 1406(a) authorizes this Court to dismiss the action, or if it is in the interest of justice, transfer the case to an

appropriate venue that would have personal jurisdiction. See Porter v. Groat, 840 F.2d 255, 257–58 (4th Cir.1988) (stating § 1406(a) authorizes transfer "to any district, which would have had venue if the case were originally brought there, for any reason which constitutes an impediment to a decision on the merits in the transferor district but would not be an impediment in the transferee district"). The decision to transfer venue pursuant to § 1406(a) rests within the sound discretion of the district court. Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1201 (4th Cir. 1993). "Section 1406(a) favors 'adjudications on the merits over dismissals' because of defects in personal jurisdiction." Wright v. Zacky & Sons Poultry, LLC, No. 1:14cv570, 2015 WL 2357430, at *8 (M.D.N.C. May 15, 2015) (quoting Jackson v. Leake, No. 1:05CV00691, 2006 WL 2264027, at *10 (M.D.N.C. Aug. 7, 2006)). Transfer is appropriate "for any reason which constitutes an impediment to a decision on the merits in the transferor district but would not be an impediment in the transferee district." Porter v. Groat, 840 F.2d 255 (4th Cir.1988). Transfer had been deemed proper under section 1406 "when there is an obstacle-either incorrect venue, absence of personal jurisdiction, or both-to a prompt adjudication on the merits in the forum where originally brought." Dubin v. United States, 380 F.2d 813, 816 (5th Cir.1967). For this reason, it is recommended that this action be transferred to the United States District Court for the Northern District of New York for further adjudication.[7]

---

[7] The undersigned notes that the statute of limitations for defamation in New York is one year. See Mayer v. Riordan, 55 Misc. 3d 1203(A), 55 N.Y.S.3d 692 (N.Y. Sup. Ct. 2017) (citing Colantonio v. Mercy Med Ctr., 115 AD3d 902, 903 (2d Dept 2014)) (providing that "[t]he statute of limitations applicable to defamation claims is one year . . . and generally accrues on the date of the first publication").

## V. CONCLUSION

For the reasons discussed above, it is recommended that Defendant's Motion to Dismiss (ECF No. 11) be granted in part. It is recommended this action be transferred to the United States District Court for the Northern District of New York for lack of personal jurisdiction in this court over Gareri.

                                                      s/Thomas E. Rogers, III
                                                     Thomas E. Rogers, III
                                                     United States Magistrate Judge

January 29, 2018
Florence, South Carolina

**The parties are directed to the important information on the following page.**